UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Brian J. Benner, PC,              Case No.: 15-44889[1]
                                                     Chapter 7
       Debtor.                       Hon. Mark A. Randon
_____/

Thomas Elkins,

       Plaintiff,

v.                                                  Adversary Proceeding
                                                Case No.: 15-04638

Brian J. Benner,

       Defendant.
_____/

## OPINION AWARDING DAMAGES TO PLAINTIFF

**I.  INTRODUCTION**

Thomas Elkins was suspended from the practice of law and has since retired from the profession; Brian J. Benner is disbarred. This adversary proceeding harks back to a time both were still in good standing with the bar.

Elkins claims Benner owes him the balance of a "third-of-a-third" fee split for the Ysbelys Martinez case, and the debt is nondischargeable. Martinez suffered a closed-head injury in an automobile accident, and, after Elkins' referral, Benner represented her

---

[1] This case is jointly administered with Brian J. Benner (case number 15-44890).

in two lawsuits–one of which he settled for $1,980,000.00.[2]  From the settlement proceeds, Martinez was paid in full; Benner received a $661,879.92 attorney fee but only paid Elkins $39,500.00.  Then, facing lawsuits from several disgruntled clients, Benner filed bankruptcy.  In this adversary proceeding, Elkins challenges the dischargeability of the debt under 11 U.S.C. §§ 523(a)(2)(A), (4), and (6).

The Court conducted a trial on June 16, 2016.  Elkins and Benner testified.[3]  The Court also heard testimony from Martinez's friend, Brian Livingston.  In addition, 18 exhibits were admitted.  Benner argued that, even if he did agree to split his fee with Elkins, he owes nothing, because Martinez never consented to their joint participation, thus invalidating any agreement.

This opinion states the Court's findings of fact and conclusions of law.  For the reasons indicated below, the Court finds there was a valid fee-division agreement: Benner owes Elkins an additional $181,126.64, and the debt is nondischargeable.

## II.    STIPULATIONS OF FACT

The parties stipulated to the following facts:

1. Elkins, while practicing law in Michigan, referred clients who had personal injury claims to Benner, who then was practicing law in Michigan and specializing in the representation of persons who suffered personal injuries, including closed-head injuries.

---

[2]One lawsuit was a personal injury protection (PIP) lawsuit against the insurance company; the other was a third-party lawsuit against the driver of the automobile and the owner.

[3]Benner represented himself.

2. Benner expressly or impliedly agreed to divide with Elkins the fees derived from the representation of such clients; Benner was to receive two-thirds and Elkins was to receive one-third.

3. Martinez suffered personal injuries, including a closed-head injury.

4. After Elkins referred Martinez to Benner, Benner was counsel of record for Martinez in two Michigan actions which arose from her personal injuries.

5. The settlement proceeds from the Martinez actions were deposited in Benner's IOLTA account.

6. Instead of promptly paying Elkins a full one-third of the Martinez fees, Benner made partial payments to Elkins on account of Elkins' one-third share of the Martinez fees.

7. Benner was disbarred in Michigan, effective September 1, 2014, for misappropriating funds that belonged to others.

8. Benner's bankruptcy schedules indicate that Benner owes Elkins $165,000.00, which Benner calculated to be the difference between Elkins' one-third share of the Martinez fees and Benner's partial payments to Elkins.

(Dkt. No. 52 at pp. 2-3).

## III. JURISDICTION

The Court has subject-matter jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).[4]

---

[4] The parties have agreed that this Court has subject-matter jurisdiction, and that this is a core proceeding. Joint Final Pre-Trial Order (Dkt. No. 52 at p. 1).

## IV. BACKGROUND

### A. *Benner's Testimony*

Benner testified that he represented Martinez in two lawsuits and agreed to pay Elkins one-third of his fee. After the personal injury lawsuit settled, the check was deposited into Benner's firm's IOLTA account. Martinez received her entire share of the proceeds; Benner gave Elkins a partial payment.

Benner acknowledged that his bankruptcy schedules listed a $165,000.00 debt owed to Elkins (his calculation of the fee-division balance), and he designated the debt as neither contingent, unliquidated, disputed, nor subject to a setoff. However, he argued that Martinez never consented to the fee-division arrangement, rendering it invalid per Michigan Rule of Professional Conduct 1.5(e).

### B. *Livingston's Testimony*

Livingston testified that he met Martinez in 1998 and Elkins approximately one year later. Over the years, Elkins represented Livingston in at least two lawsuits.

In 2010, Martinez was involved in an automobile accident and asked Livingston to help her find an attorney. While visiting Martinez at her home, Livingston called Elkins and put the phone on speaker to introduce her to Elkins.

### C. *Elkins' Testimony*

Elkins testified that he met Benner in 1997. Benner encouraged Elkins to refer cases to him, and the two had an arrangement in which Benner agreed to pay one-third of his attorney fee for each referral. When Livingston told Elkins about Martinez, Elkins

thought it would be a good case for Benner. He recalled the conversation with Livingston and Martinez: he told Martinez that Benner would be the principal attorney on the case, he would act as a facilitator, and there would be a fee arrangement with Benner in which he would receive one-third of Benner's fee at no additional expense to Martinez. Benner subsequently represented Martinez in both lawsuits arising from the accident.

**V. ANALYSIS**

    ***A. There was a Valid Fee-Division Arrangement between Benner and Elkins Based on Michigan Rule of Professional Conduct 1.5(e)***

Michigan Rule of Professional Conduct 1.5(e) provides as follows:

A division of a fee between lawyers who are not in the same firm may be made only if:

(1)    the client is advised of and does not object to the participation of all the lawyers involved;[5] and

(2)    the total fee is reasonable.

The parties do not dispute that the fee was reasonable. The issue is whether Martinez was advised of Elkins' participation in the lawsuits and objected to it.

---

    [5]Benner relies on *Evans & Luptak, PLC v. Lizza*, 251 Mich. App. 187 (2002) and *Morris & Doherty, P.C. v. Lockwood*, 259 Mich. App. 38 (2003) in support of his argument that Michigan Rule of Professional Conduct 1.5(e) requires the client's *consent* to the fee division. These cases are distinguishable. The issue regarding consent in *Lizza* was whether a lawyer who has a conflict of interest with a client can refer the client to another law firm and receive a referral fee, if the client consents to waive the conflict under Michigan Rules of Professional Conduct 1.7. In *Lockwood*, the court found a referral fee agreement was not enforceable because it required payment to an inactive attorney.

Elkins testified he informed Martinez that he would act as a facilitator during the lawsuits and that he would receive one-third of Benner's fee. After Elkins informed Martinez of the arrangement, she retained Benner as her attorney. The Court observed Elkins' demeanor while testifying and finds his testimony credible: Martinez was advised of Elkins' participation, and based on her subsequent decision to retain Benner–and lack of any admissible evidence that she objected to the joint participation–there was a valid fee-division agreement.[6]

### B. Benner Owes Elkins $181,126.64 in Actual Damages

Benner contends that, assuming the fee-division agreement was valid, he owes Elkins $165,000.00.[7] Elkins' complaint agreed he was owed "at least" that amount but later specified that Benner owed him $180,187.00. Neither amount is borne out by the evidence at trial: (1) the check from Martinez's settlement in the amount of $1,980,000.00 was deposited into Benner's IOLTA account on May 3, 2013. *See* Exhibit 20; (2) Martinez received two-thirds of the $1,980,000.00, which totaled $1,318,120.08. *See* Exhibit 21; and (3) Benner paid Elkins $39,500.00. *See* Exhibit 8.

Based on the evidence presented at trial, the Court finds as follows:

---

[6]Again, Benner does not deny that he agreed to pay Elkins a fee.

[7]Benner does not explain how he arrived at this amount. His testimony at trial was that he did not have any records from the Martinez settlement.

1. Benner received $661,879.92 (the total settlement amount of $1,980,000.00 minus Martinez's share of $1,318,120.08).[8]

2. Elkins was entitled to one-third of the amount Benner received, which equals $220,626.64 ($661,879.92 divided by three).

3. Benner owes Elkins $181,126.64 ($220,626.64 minus $39,500.00).

## C. *The Court Declines to Award Elkins Treble Damages*

Pursuant to Michigan Compiled Laws § 600.2919a(1)(a), "[a] person damaged as a result of . . . the following *may* recover [three] times the amount of actual damages sustained, plus costs and reasonable attorney fees: [a]nother person's stealing or embezzling property or converting property to the other person's own use." (Emphasis added).

Based on the statute's permissive language, courts have held that "the trier of fact has the discretion to decide whether to award treble damages[.]" *LMT Corp. v. Colonel, L.L.C.*, No. 294063, 2011 WL 1492589, at *3 (Mich. April 19, 2011); *see also In re Stewart*, 499 B.R. 557, 570 (Bankr. E.D. Mich. 2013) ("[t]rebling isn't automatic; it is within the Court's discretion based on what is fair under the circumstances").

Treble damages are punitive in nature, meant to punish dishonest defendants and set an example. *Alken-Ziegler, Inc. v. Hague*, 283 Mich. App. 99, 104 (2009). Benner is disbarred and payment of the fee-division plus interest sufficiently compensates Elkins.

---

[8]There is no evidence that Benner deducted his costs from the settlement. In fact, the trial testimony suggests Benner may have used proceeds from the PIP settlement to pay expenses in the third-party lawsuit.

-7-

Therefore, the Court finds that–based on the totality of the circumstances–trebling of damages is not warranted in this case.

### D.     *Elkins' Judgment is Nondischargeable*

Section 523(a)(6) provides that debts for "willful and malicious injury by the debtor" are nondischargeable.  Conversion can constitute an injury to property that falls within the scope of section 523(a)(6). *Davis v. Aetna Acceptance Co.*, 293 U.S. 328 (1934).  However, the conversion must be both willful and malicious: "a conversion which is innocent or technical" or "an honest but mistaken belief . . . that powers have been enlarged or incapacities removed" is not covered by section 523(a)(6). *Id.* at 332.  In Michigan, civil conversion is defined as "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391 (1992).

Knowing Elkins had not received his share of the fee, Benner used Elkins' money to pay himself, clients, a friend, employees, and at least one other attorney.  Benner later promised to pay Elkins from the proceeds of another significant settlement.  This demonstrates that Benner's conversion was willful and malicious; therefore, the debt is nondischargeable under section 523(a)(6).

Benner also agreed that the debt owed to Elkins would not be discharged in a Stipulation for Entry of Order Waiving Debtor Brian J. Benner's Chapter 7 Discharge under section 727(a)(10) that was entered on May 10, 2016.  The stipulation provides, in part, as follows:

5. The Parties acknowledge that this waiver of discharge will not affect the Debtor's ability, or that of third parties, to dispute the individual liability of the Debtor for the certain individual claims specifically listed below. If the Debtor owes a debt for the following claims below, the Debtor concedes that said debt is not discharged in this bankruptcy as a result of this waiver of discharge:

    a. Creditor #34, Thomas W. Elkins, with a claimed debt of $165,000.00 for an alleged referral fee and potential personal liability of a business debt. Mr. Elkins has a pending adversary proceeding against the Debtor. *See* E.D. Mich. Bankr. A.P. No. 15-4638-mar. *If the Court rules in favor of Mr. Elkins in that adversary proceeding, Mr. Benner concedes that the debt owed to Mr. Elkins would not be discharged as a result of this waiver*.

*McDermott v. Benner (In re Benner)*, E.D. Mich. Bankr. A.P. No. 16-4150 (Dkt. No. 8 at p. 3) (emphasis added).

## VI. CONCLUSION

Based on the foregoing findings of fact and conclusions of law, the Court finds there was a valid fee-division agreement: Benner owes Elkins an additional $181,126.64, and the debt is nondischargeable based on Benner's stipulation and section 523(a)(6).

Judgment will enter in favor of Elkins.

**IT IS ORDERED**.

**Signed on June 30, 2016**

                                                                        **/s/ Mark A. Randon**
                                          **Mark A. Randon**
                                          **United States Bankruptcy Judge**